IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,　　) | |
| 　　　　Plaintiff,　　　　　　) | |
| 　　　　　　　　　　　　　　) | |
| vs.　　　　　　　　　　　　) | Case No. 10-10139-01 WEB |
| 　　　　　　　　　　　　　　) | |
| KENNETH W. CARLETON,　　　　) | |
| 　　　　Defendant.　　　　　) | |
| _____) | |

## SENTENCING MEMORANDUM IN
## SUPPORT OF DOWNWARD VARIANCE

COMES NOW the defendant, Kenneth W. Carleton, by and through his attorney, Timothy J. Henry, Assistant Federal Defender for the District of Kansas, and files with this Court his request for the Court to impose a sentence of probation, or alternatively to a sentence below the applicable guideline range in this case. On behalf of this Memorandum, defense counsel states as follows:

When initially confronted by the authorities, including Secret Service agent Tiano, Kenneth Carleton waived his *Miranda* rights and openly admitted his involvement in this crime. *See* PSR ¶¶ 24-27 (re: client's admissions to the authorities). Kenneth later pleaded guilty to the more serious charge of manufacturing counterfeit federal reserve notes charged in count one of the Indictment. Kenneth never considered litigating the issue of guilt or innocence; he knew he was guilty and accepted responsibility early on. The issue has always been over the proper sentence for someone whose life has spiraled downward over the past five years, almost ending this past summer when he attempted suicide.

As pointed out in paragraph 10 of the presentence report, defense counsel worked into Kenneth's plea agreement the ability to request a downward variance or departure. *See also* Plea Agreement, ¶¶ 3 and 6(d).  More importantly, the presentence report in this case has identified factors which **would** warrant a downward variance pursuant to the factors set forth in 18 U.S.C. § 3553(a).  *See* PSR ¶¶ 108-114.  Further, the Government has not objected to these findings in the presentence report (PSR ¶ 116), although it will be asking the Court to sentence defendant to the low end of the applicable guideline range.  *See* Plea Agreement, ¶ 6(b).

Kenneth's story reads like a "riches to rags" story.  For 25 years, he successfully worked in the aircraft industry, first with Cessna from 1980 to 1986, and for 20 years thereafter with Boeing as a lead inspector.  *See* PSR ¶¶ 80, 82, 83.  Although in and out of marriage during these years, he always was the one who raised his three girls throughout their childhood and teenage years.  PSR ¶ 67.  Unfortunately, working in the aircraft industry takes its toll on one's body, and such a toll did not elude Kenneth.  He has had surgery on both shoulders for his rotator cuff injuries, both wrists for his carpal tunnel injuries, as well as on both elbows for nerve injuries.  PSR ¶ 68.  In 2005, Kenneth was forced to bring a workers compensation claim against Boeing after they gave him a medical layoff and told him to seek unemployment benefits.  PSR ¶ 69.  Along with his other medical issues, Kenneth now suffers from degenerative disc disease and arthritis.  *Id.*

From losing his job in 2005 to his attempted suicide in 2010, Kenneth's life has been spiraling downward. While waiting some two years for his workers compensation settlement in 2007, Kenneth was forced to get by at first with unemployment compensation. When those benefits ended, he was forced to live off credit cards and steadily going further into debt.

On top of his day-to-day living expenses was his mortgage for the home he grew up in in Butler county. When his mother died in 1999, he decided to buy the home to keep it in the family. Unfortunately, his loss of employment in 2005 caused him to get behind in payments, and which ultimately led to foreclosure proceedings and a sheriff's sale of the home this past October, 2010. As is usually the case, the bank sold the house for what they had in it, some $60,000 +. Despite all the efforts made over the past 5 years to try to save the house he grew up in, Kenneth lost approximately $40,000 in equity he had built up over the preceding decade.

Ironically, losing the house was not the cause for Kenneth reaching "bottom" in this downward spiral, although losing all your equity in one's home is tough to take. Actually, losing the home has helped Kenneth in his recovery from the "bottom" he most surely had reached when he attempted suicide. As pointed out in the presentence report, the defendant acknowledges "his financial pressures are significantly less severe as he has lost the house and has no assets to attempt to preserve." PSR ¶ 114.

Even when he finally received his workers compensation settlement, it offered only temporary financial help as his debt continued to grow over the years since his medical layoff in 2005.  Thus, in 2009 he picked up his two Harvey County cases (09-CR-127 and 09-CR-176) for forgery and identity fraud.  Then, in June of 2010, he found himself in the present criminal mess regarding the counterfeiting charge.  It was at this time that he attempted suicide.

After spending two days in the hospital, Kenneth was transferred to Good Shepherd Hospital, and then to outpatient mental health counseling.  After his attempted suicide, but prior to the indictment and arrest in this case in September of last year, Kenneth had three months to stabilize his mental and physical being through his twice-a-week counseling with Shawn Padgett of the South Central Mental Health Counseling Center.  PSR ¶ 73.  Kenneth acknowledges he not only suffers from depression, but from a substance abuse problem, and wants to continue in treatment to address these issues.  PSR ¶ 78.  He has remained drug free since his attempted suicide in June of 2010.  PSR ¶ 113.

The question now becomes what is an appropriate sentence for someone who apparently has come back from the precipice of death this past summer?  He presently has a guideline range of 18 to 24 months.  Kenneth has remained in custody since his arrest on September 17, 2010 (*see* PSR, p. 1) and, thus, will have already served over four months in custody by the time he is sentenced later this month.  Additionally, he faces probation violation hearings for his two cases in Harvey county once he is sentenced federally.  If

4

found in violation due to his new federal conviction, his underlying sentence in those two cases appears to be for a total sentence of 12 months.

Kenneth Carleton turns 55 years old the day before his sentencing later this month. He recently lost the home he grew up in and the equity he had in it due to its foreclosure and sheriff's sale this past October. He has his GED,[1] but due to his health, is realistically unemployable. He won't be employed in the aerospace industry due to his work-related injuries. His body is broken, and his prospects for employment are slim, especially in the present employment climate. He has tried, but to date has been unsuccessful at obtaining Social Security Disability. Although he has been encouraged to continue to apply for disability, any employment he could physically do would likely be part-time at minimum wage. He truly is starting over at age 55.

In Kenneth's mind, last June when he tried to take his life seems so long ago. Today, Kenneth has the desire to continue with his mental health and substance abuse treatment. With the help of his daughters who are still supportive of him, Kenneth appears to have has turned the corner. Even if he faces time on his Harvey county cases, is it necessary to impose a sentence of incarceration in the present case? More than incarceration, Kenneth needs support to continue in the direction he presently is on. Incarceration may not deter him from this direction, but it will certainly defer him from his rehabilitation.

---

[1] Kenneth Carleton is presently enrolled in the high school diploma program at the Butler County Jail, but is appears he will not be able to finish the curriculum by the time he is sentenced in this case.

Given the hand that he, and only he dealt himself, it is certainly within the Court's discretion to punish Kenneth with a sentence of incarceration.  But what will that accomplish?  When Kenneth came out of his suicidal daze, he truly had hit bottom.  He has been clean since that time, and has been aided by the counseling he received this past summer prior to his arrest in this case in September of last year.

The criminal justice system works when it gets individuals to the point where they no longer are a drag on society, and hopefully will become a productive member of society.  Some clients take longer to get to that point in their rehabilitation than others, but Kenneth is now at that point.  He was a productive member of society for those 25 years he worked in the aerospace industry raising his three daughters.  He's hit a rough patch of late, but appears to have survived and come out a better person for it.  Both Kenneth, his daughters, and counsel hope this Court feels the same.

WHEREFORE, for the above and foregoing reasons, defendant prays this Court impose a sentence of probation in this case.

Respectfully submitted,

s/Timothy J. Henry
TIMOTHY J. HENRY
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6445
Fax: (316) 269-6175
E-mail: Tim_Henry@fd.org
KS S. Ct. No. 12934

6

### CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2011, I electronically filed the foregoing

Sentencing Memorandum In Support Of Downward Variance with the clerk of the court by

using the CM/ECF system which will send a notice of electronic filing to the following:

> Alan G. Metzger
> Assistant U.S. Attorney
> 301 N. Main, Suite 1200
> Wichita, KS 67202

One copy mailed to:

> Kenneth W. Carleton
> c/o Butler County Jail
> 701 S. Stone Road
> El Dorado,  KS 67042

> s/Timothy J. Henry
> TIMOTHY J. HENRY
> Assistant Federal Public Defender
> Federal Public Defender Office
> 301 N. Main, Suite 850
> Wichita, KS 67202
> Telephone: (316) 269-6445
> Fax: (316) 269-6175
> E-mail: Tim_Henry@fd.org
> KS Sup. Ct. No. 12934